UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
JUSTIN SAMUELS,

               Plaintiff,

          -against-

WILLIAM MORRIS AGENCY, and CREATIVE
ARTISTS AGENCY,

              Defendants.
------------------------------------X
DEBORAH A. BATTS, United States District Judge.

10 Civ. 7805 (DAB)
MEMORANDUM & ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/19/11

    Plaintiff Justin Samuels filed this action pro se and in forma pauperis on October 8, 2010, complaining that Defendants' policy of returning unsolicited screenplays unread was discriminatory.  An attorney appeared on Plaintiff's behalf on November 3, 2010.  After Defendants moved to dismiss the original Complaint, Plaintiff filed an Amended Complaint on February 18, 2011, alleging violations of Plaintiff's rights under 42 U.S.C. § 2000e-2 ("Title VII"), 42 U.S.C. §§ 1981 and 1982, N.Y. Exec. Law § 296, N.Y. Admin. Code 8-107, California Civil Code § 51, and California Government Code § 12940.  Now before the Court is Defendants' Motion to Dismiss the Amended Complaint. For the reasons set forth herein, the Motion to Dismiss is GRANTED.

1

I. BACKGROUND

The following facts, drawn from Plaintiff's Amended Complaint, are assumed true for purposes of this Motion to Dismiss.  Plaintiff Justin Samuels, a self-identified "blackish" screenwriter, has brought this action against William Morris Agency, LLC ("WMA") and Creative Artists Agency, LLC ("CAA"). Plaintiff asserts twelve causes of action under seven state and federal statutes.

Plaintiff contacted the Defendants in 2008 seeking consideration for screenplays Plaintiff had written.  (Am. Compl. ¶¶ 51, 55.) Defendants, pursuant to their policies, returned the unsolicited screenplays without reviewing them.  (Am. Compl. ¶¶ 52, 56.)  Industry practice requires that screenwriters obtain an inside-industry referral before screenplays are reviewed.  (Am. Compl. ¶¶ 25, 46, 47.)  Plaintiff contends that his "life experiences" have not promoted the creation of "relationship[s] for his benefit with major figure[s] in the big screen movie industry," which is predominantly white.  (Am. Compl. ¶¶ 42, 58.) Plaintiff contends that the Defendants' reliance on the "who-you-know method" of recruitment is discriminatory.  (Am. Compl ¶ 25, 26.)  Buttressing his claim, Plaintiff offers U.S. Census data on the racial makeup of the United States, New York, New York City and California, and historical accounts of racial discrimination

2

in the film industry.  (Am. Compl. ¶¶28-39, 42, 59-65.)  Using

these data, Plaintiff concludes that there is a "systemic denial

of opportunities for blackish people."  (Am. Compl. ¶ 67.)

On August 31, 2010, the EEOC granted Plaintiff a right to

sue letter. (Am. Compl. ¶ 70.)  This lawsuit followed.  Plaintiff

seeks a total of sixteen million dollars worth of damages: eight

million dollars in lost earnings, pay, and interest and eight

million dollars in punitive, exemplary, liquidated, and

compensatory damages for pain and suffering and emotional

distress.  Defendants have moved for dismissal for failure to

state a claim upon which relief can be grated, pursuant to

Federal Rule of Civil Procedure 12(b)(6).


## II. DISCUSSION

### A. Motion to Dismiss Standard

For a complaint to survive dismissal under Rule 12(b)(6),

the plaintiff must plead "enough facts to state a claim to relief

that is plausible on its face." Bell Atl. Corp. v. Twombly, 550

U.S. 544, 570 (2007).  "A claim has facial plausibility," the

Supreme Court has explained,

> "when the plaintiff pleads factual content that allows
> the court to draw the reasonable inference that the
> defendant is liable for the misconduct alleged.  The

3

> plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 556-57). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotation marks omitted). "In keeping with these principles," the Supreme Court has stated,

> "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

Iqbal, 129 S.Ct. at 1950.

   In ruling on a 12(b)(6) motion, a court may consider the complaint as well as "any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference." Zdenek Marek v. Old Navy (Apparel) Inc., 348 F. Supp. 2d 275, 279 (S.D.N.Y. 2004) (citing

Yak v. Bank Brussels Lambert, 252 F.3d 127, 130 (2d Cir. 2001)
(internal quotations omitted)).

While employment discrimination complaints need not contain
specific facts establishing a prima facie case of discrimination,
the complaint "must include . . . a plain statement of the claim
. . . [that] give[s] the defendant fair notice of what the
plaintiff's claim is and the grounds upon which it rests."
Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).
Employment discrimination claims must be facially plausible to
survive a motion to dismiss.  See Iqbal, 129 S.Ct. at 1953 ("Our
decision in Twombly expounded the pleading standard for all civil
actions and it applies to antitrust and discrimination suits
alike." (internal citations and quotation marks omitted)).

B. Title VII Discrimination Claim

Title VII prohibits employers from failing or refusing to
hire "any individual with respect to his compensation, terms,
conditions, or privileges of employment, because of such
individual's race, color, religion, sex, or national origin" and
to classify applicants for employment "in any way which would
deprive or tend to deprive any individual of employment
opportunities . . . because of such individual's race, color,
religion, sex, or national origin."   42 U.S.C § 2000e-2(a)(1)-
(2) (2006).  "In order to survive a motion to dismiss,

allegations of employment discrimination under Title VII must
make out a plausible claim that a plaintiff experienced
discrimination effected either through disparate treatment of
members of a protected group or through a facially neutral
classification that resulted in a disparate impact on a protected
group." Malone v. New York Pressman's Union No. 2, No. 07 Civ.
9583, 2011 WL 2150551, at *6 (S.D.N.Y. May 31, 2011).

    1.  Disparate Treatment

    Under the framework set forth in McDonnell Douglas Corp. v.
Green, 411 U.S. 792, 802 (1973), a plaintiff makes a prima facie
showing of discrimination when he alleges that: (1) he is a
member of a protected class; (2) he was qualified for the
position held; (3) he suffered an adverse employment action; and
(4) the circumstance surrounding the action gave rise to an
inference of discrimination. St. Mary's Honor Ctr. v. Hicks, 509
U.S. 502, 506 (1993). As noted above, a plaintiff need not
allege specific facts establishing each element of a prima facie
case of disparate treatment to survive a motion to dismiss.
Nevertheless, a plaintiff must allege sufficient facts to give a
defendant reasonable notice of the claims against it.

    Here, Plaintiff has not alleged facts that would support a
disparate treatment claim under the notice pleading standard of
Swierkiewicz and Iqbal. Plaintiff does not allege that

Defendants were aware of his race when they returned his
screenplays unread.  Nor does Plaintiff allege that he was
treated differently than white screenwriters who also lacked
industry connections.  Rather, he complains that all
screenwriters lacking industry connections are treated
differently from those who have those connections.  Such claims
cannot form the basis of a Title VII disparate treatment claim.
See Krasner v. HSH Nordbank AG, 680 F. Supp. 2d 502, 517
(S.D.N.Y. 2010) (rejecting a Title VII claim based on a
supervisor's preference for a paramour (quoting Schobert v.
Illinois Dep't of Transp., 304 F.3d 725, 733 (7th Cir. 2002)
("Title VII does not . . . prevent employers from favoring
employees because of personal relationships.  Whether the
employer grants perks to an employee because she is a protégé, an
old friend, a close relative or a love interest, that special
treatment is permissible as long as it is not based on an
impermissible classification."))).

    2.  Disparate Impact

    Under Title VII, a complaining party can bring a disparate
impact claim where the complaining party can "demonstrate that a
respondent uses a particular employment practice that causes a
disparate impact on the basis of race, color, religion, sex, or
national origin . . ." 42 U.S.C. § 2000e-2(k)(1)(A)(I).  To make

7

a prima facie showing of disparate impact, "[a] plaintiff's allegation must (1) identify a policy or practice, (2) demonstrate that a disparity exists, and (3) establish a causal relationship between the two. Robinson v. Metro-North Commuter R.R., 267 F.3d 147, 160 (2d Cir. 2001); Attenborough v. Const. and Gen. Bldg. Laborer's Local 79, 691 F. Supp. 2d 372, 384 (S.D.N.Y. 2009). As discussed above, Plaintiff need not set out facts that would establish every element of a prima facie case, but must give Defendants notice of the nature of his complaint. Here, Plaintiff has identified a policy or practice, namely, Defendants' policies of returning unsolicited screenplays unread. Nevertheless, Plaintiff has failed to allege facts that would state a disparate impact claim under the standard set forth in Swierkiewicz and Iqbal.

"The basis for a successful disparate impact claim involves a comparison between two groups—those affected and those unaffected by the facially neutral policy. This comparison must reveal that although neutral, the policy in question imposes a significantly adverse or disproportionate impact on a protected group of individuals." Tsombanidis v. West Haven Fire Dep't, 352 F.3d 565, 575 (2d Cir. 2003) (internal quotation marks omitted). Plaintiff's Complaint is wholly insufficient to establish that Defendants' facially neutral policy of returning unsolicited

screenplays unread affects members of a protected group
disproportionately.  Plaintiff alleges only that "The numerical
disparity between the number of blackish writers who are promoted
to the public (e.g. advertised or marketed) in connection with
big screen movie productions and the number of whitish writers
who are promoted to the public in connection with big screen
movie productions is very statistically significant." (Compl., ¶
40.)  He also makes the conclusory allegation that "Defendants'
who-you-know method has a disparate impact upon blackish film
writers."  (Id., ¶ 50.)  Plaintiff makes no allegations regarding
the racial makeup of screenwriters who submit unsolicited
screenplays, and makes no plausible factual allegation that the
burden of Defendants' facially neutral policy falls
disproportionately on the members of a protected group.  See
Malone, 2011 WL 2150551, at *8 (granting a motion to dismiss a
disparate impact claim in the absence of allegations that a
promotion policy affected minority employees any differently than
white employees of similar experience and seniority).

Moreover, Plaintiff has failed to allege that Defendants'
practice caused a disparity in the treatment of potential
screenwriters who are members of a protected group.  Nothing
about the facts alleged suggests that the inside-industry
referral policy would not equally affect members of all racial

groups that lacked industry connections.  <u>See</u> <u>Collette v. St.</u>
<u>Luke's Roosevelt Hosp.</u>, 132 F. Supp. 2d 256, 278 (dismissing a
disparate impact claim where defendant's failure to post a job
opening would affect all applicants, regardless of race or
religion) (citing <u>Lopez v. Metro. Life Ins. Co.</u>, 930 F.2d 157,
160 (2d Cir. 1991) ("The causal requirement of Title VII
recognizes that underrepresentation [of a protected class] might
result from any number of factors, and it places an initial
burden on the plaintiff to show that the specific factor
challenged under the disparate impact model results in the
discriminatory impact.")).

<u>C. 42 U.S.C. § 1981 and 42 U.S.C. § 1982 Claims</u>

        Plaintiff alleges Defendants denied Plaintiff "the full and
equal benefit of proceedings for the security of persons" in
violation of 42 U.S.C. § 1981.  (Am. Compl. ¶ 72.)  Plaintiff
additionally alleges that Defendants denied Plaintiff "the right
to lease, sell, and convey personal property" in violation of 42
U.S.C. § 1982.  (Am. Compl. ¶ 74).  To state a claim for racial
discrimination under §§ 1981 or 1982, a plaintiff must allege
intentional discrimination on the part of the defendant.  <u>Mian v.</u>
<u>Donaldson, Lufkin & Jenrette Sec.</u>, 7 F.3d 1085 (2d Cir. 1993);
<u>Perry v. State of New York</u>, No. 08 Civ. 4610, 2009 WL 2575713
(S.D.N.Y. Aug. 20, 2009) ("A plaintiff is required to set forth

factual circumstances from which discriminatory motive can be inferred. . . . In the absence of such allegations, dismissal at the pleading stage is warranted.") (internal citations omitted). Here, Plaintiff fails to allege any intentional discrimination, a requisite for claims under §§ 1981 and 1982.  Plaintiff does not allege that Defendants were even aware of his race when they returned his screenplays unread.[1]  Nor does he allege that Defendants' policy on unsolicited screenplays has a racial motivation or is born of discriminatory animus.  Plaintiff's claims under §§ 1981 and 1982 must be dismissed.

D. Leave to Replead

When a complaint has been dismissed, permission to amend it "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  However, a court may dismiss without leave to amend when amendment would be "futile," or would not survive a motion to dismiss.  Gatt Communications, Inc. v. PMC Associates, 10-CV-8, 2011 WL 1044898 at *7 (S.D.N.Y. Mar. 10, 2011) (citing Oneida Indian Nation of NY v. City of Sherrill, 337 F.3d 139, 168 (2d Cir. 2003).

---

[1]Defendants attach Plaintiff's screenplay submission emails to the Declaration of Lawrence R. Sendak to demonstrate that Defendants were unaware of Plaintiff's race.  Plaintiff, however, makes no allegation that Defendants were aware of Plaintiff's race when they returned his screenplays, so the Court need not consider the submission and does not rely on it.

Plaintiff states no colorable claims under 42 U.S.C. §
2000e-2 or 42 U.S.C. §§ 1981 and 1982 that he was discriminated
against, intentionally or unintentionally, on the basis of race.
He makes no allegations that Defendants were aware of his racial
background when they returned his unsolicited screenplays, and
his allegations that Defendants' facially neutral policy affects
minorities disproportionately are utterly conclusory.  Moreover,
Plaintiff had prior notice of the deficiencies of his original
Complaint but failed to address such deficiencies in his Amended
Complaint.  Because of such defects and the futility of amending,
Plaintiff's claims under 42 U.S.C. § 2000e-2 and 42 U.S.C. §§
1981 and 1982 are dismissed with prejudice.

E. Remaining Claims

With the dismissal of all federal claims, this Court
declines to exercise supplemental jurisdiction over Plaintiff's
State and City law claims.  Plaintiff's claims under California,
New York State and New York City laws are therefore dismissed
without prejudice.

III. CONCLUSION

For the reasons set forth above, the Defendants' Motion to
Dismiss is granted. Plaintiff's federal U.S.C. § 2000e-2 and 42
U.S.C. §§ 1981 and 1982 claims are dismissed with prejudice.

12

Plaintiff's remaining claims are dismissed without prejudice. The Clerk of Court is directed to CLOSE the docket in this case.

SO ORDERED

Dated:    New York, New York

_July 18, 2011_

_Deborah A. Batts_
Deborah A. Batts
United States District Judge